IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSALBA M., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-03611 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| MARTIN O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Rosalba M. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Dkt. 11. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

## BACKGROUND

Plaintiff applied for DIB on March 26, 2020 alleging disability since August 13, 2013 due to arthritis and tendonitis of the right shoulder, generalized

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

osteoarthritis, plantar fasciitis, carpal tunnel syndrome, high blood pressure, anxiety, and depression. Administrative Record ("R.") 163-64, 193. She concedes that since she did not appeal the denial of an earlier application for benefits, she must establish that she was disabled sometime between March 1, 2016 and her June 30, 2017 date last insured ("DLI"). Dkt. 11 at 1 and n.1. *See Sabo D. v. Saul*, No. 19 C 5948, 2021 WL 1315630, at *1 (N.D. Ill. Apr. 8, 2021) (citing *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012)). At the time of the DLI, plaintiff was 51 years old, making her a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d); R. 163. She trained and worked as a certified nursing assistant but quit in August 2013 due to her conditions and has not engaged in substantial gainful activity since that date. R. 194.

The Social Security Administration denied plaintiff's application initially on October 7, 2020, and upon reconsideration on December 28, 2020. R. 78–101. Plaintiff filed a timely request for a hearing and on June 8, 2021 she appeared before an administrative law judge ("ALJ"). R. 37–55. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Joe Entwisle (the "VE").[2] *Id*. On August 25, 2021, the ALJ found that plaintiff's joint dysfunction, degenerative disc disease, and depression are severe impairments, but that they do not alone or in combination with her non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 23-26.

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work with several non-exertional restrictions. R. 26-30. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past nursing work, but could perform a significant number of other jobs available in the national economy. R. 30-32. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 32. The Appeals Council denied plaintiff's request for review on May 26, 2022. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, plaintiff argues that the ALJ: (1) made a flawed mental RFC determination that failed to properly account for her moderate limitations and ignored relevant opinion evidence; and (2) improperly discounted her subjective statements regarding her physical symptoms.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

---

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

3

**DISCUSSION**

A.  **Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct.

4

1148, 1154 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

B.  Analysis

1.  **Mental RFC**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in assessing her mental RFC. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found that prior to the June 30, 2017 DLI, plaintiff was able to: perform simple, routine tasks with no more than occasional and minor changes in the work setting; tolerate brief and superficial interaction with the public if incidental to her primary job duties; never engage in direct public service either in

5

person or on the phone; and never work in crowded, hectic environments. R. 26. Plaintiff argues generally that these restrictions are insufficient to address her moderate limitations in interacting with others and maintaining concentration, persistence, or pace, but she does not articulate what additional restrictions she requires. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address [plaintiff's] limitations in concentration, persistence, or pace because he hypothesizes none").

Nor does plaintiff cite a single medical record between January 2016 and at least November 2020 reflecting greater functional restrictions than those set forth in the RFC. Though plaintiff complained on January 15, 2016 of depression, poor sleep, poor energy, and poor mood, a mental status exam that day revealed full affect, clear speech, logical thought process, normal perceptions, normal insight, and normal judgment, and the only recommended treatment was an antidepressant medication. R. 28, 792-94. Subsequent mental exams were similarly unremarkable. *See, e.g.,* R. 1212, 1250, 1273, 1313, 1341, 1382, 1414, 1435. In such circumstances, there is no merit to plaintiff's objection that the ALJ selectively ignored records supporting her claim of disability. *Cf. Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (ALJ erred by focusing on normal findings in psychiatric treatment notes and ignoring negative assessments).

Similarly unavailing is plaintiff's assertion that the ALJ should have found her disabled based on a May 10, 2021 opinion from Michelle dela Pena, APRN, and a June 7, 2021 opinion from Karla Santillan, MSW. Dkt. 11 at 10-12. The ALJ

reasonably explained that neither treater saw plaintiff or assessed her functioning during the relevant period, March 1, 2016 through the June 30, 2017 DLI. R. 29. Ms. dela Pena first evaluated plaintiff on April 20, 2021, nearly four years after the DLI, and expressly stated that she did not know whether plaintiff's impairments, symptoms, and limitations had existed prior to that visit. R. 1108. Ms. Santillan started treating plaintiff on November 5, 2020, and provided no discussion of plaintiff's functioning more than three years earlier in 2016 and 2017. R. 1597. Even if she had, "[a] medical advisor's diagnosis may be considered only if corroborated by evidence contemporaneous with the period of eligibility." *McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2018). As noted, there was no such evidence here. Plaintiff's mere speculation that problems documented in 2020 and 2021 may reflect her level of functioning years earlier is wholly insufficient to support a remand. *See Stacy W. v. Kijakazi*, No. 19 C 5988, 2022 WL 991966, at *8 (N.D. Ill. Apr. 1, 2022) (ALJ reasonably discounted opinion from treater who first saw the plaintiff more than a year after the DLI); *Charmaine R. v. Saul*, No. 18 C 7955, 2021 WL 83737, at *5 (N.D. Ill. Jan. 11, 2021) (no error where the plaintiff "failed to meet her burden of producing mental health records demonstrating disabling symptoms in the first place").

    Finally, the ALJ did not err in finding that plaintiff's ability to drive on her own and manage her finances without difficulty conflicts with her claims of debilitating deficits in concentration. R. 28. The Seventh Circuit has made clear that "it is entirely permissible to examine all of the evidence, including a claimant's

7

daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016).

Viewing the record as a whole, the ALJ did not err in finding that plaintiff is capable of performing a range of work notwithstanding her moderate mental limitations, and that decision is supported by substantial evidence. *Bruno v. Saul*, 817 F. Appx. 238, 241 (7th Cir. 2020) ("Substantial evidence is not a high hurdle to clear"). Plaintiff's request to reverse or remand the case for further consideration of this issue is denied.

**2.      Subjective Symptom Evaluation**

Plaintiff next argues that the ALJ failed to properly evaluate her statements regarding the limiting effects of her physical impairments. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as

8

an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

The ALJ found that during the relevant period, plaintiff had the physical RFC to: occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; sit, stand, and walk without limitation; occasionally climb ramps and stairs; occasionally stoop, kneel, balance, crouch and crawl; and frequently but not constantly perform fine and gross manipulation. R. 26. In addition, plaintiff could never climb ladders, ropes or scaffolds; never engage in "forceful grasping or torqueing"; never work overhead with either upper extremity; and never drive, operate moving machinery, work at unprotected heights, or have concentrated exposure to unguarded hazardous machinery. *Id*. Plaintiff says this RFC fails to account for her complaints of severe pain and functional deficits. Dkt. 11 at 13.

In discounting plaintiff's allegations of disabling physical symptoms, the ALJ first noted that they were inconsistent with the objective medical record. The ALJ acknowledged that between March 2016 and November 2017, plaintiff sometimes presented with: reduced range of motion and mild pain in the right shoulder, cervical spine, and lumbar spine; slightly reduced right hand grip strength of 4/5;

9

and left knee tenderness and mild pain with range of motion. R. 27. But on most occasions plaintiff had normal gait and posture, full upper body strength, full grip strength, intact sensation, and normal reflexes. R. 27-28 (citing R. 295-96, 300-01, 314, 428, 433, 437, 443, 449, 456, 705, 711-12, 715, 718, 721-22, 725, 728, 773, 778, 786). In addition, imaging studies showed at most mild to moderate degenerative changes at two levels of the cervical spine, one level of the lumbar spine, and the right shoulder. R. 28, 317, 319, 321, 1122, 1124, 1127-28, 1195, 1501. Plaintiff does not explain how these findings support her claims of disabling back and shoulder pain, or support greater limitations than those stated in the RFC. *See Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration").

The ALJ provided additional reasons as well for rejecting plaintiff's subjective statements. For example, plaintiff's activities of daily living were not as limited as would be expected from her reports of severe pain and dysfunction. R. 28. *See Alvarado*, 836 F.3d at 750. In addition, plaintiff received at most routine and/or conservative treatment consisting of medication, injections, and physical therapy. R. 28, 196, 232-33, 822-75. *See Edward H. v. Kijakazi*, No. 20 C 3847, 2023 WL 2683171, at *10 (N.D. Ill. Mar. 29, 2023) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)) ("As a general matter, an ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility"). Plaintiff denies that these treatments provided adequate relief, Dkt. 11

at 14, but no physician of record found plaintiff to have greater physical restrictions than those set forth in the RFC. The lack of such an opposing medical opinion "makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

There is also no merit to plaintiff's objection that the ALJ improperly dismissed her need for a cane. Dkt. 11 at 13-14. "A cane must be incorporated in an RFC if it is a medical necessity," meaning there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." *Jacqueline V. v. O'Malley*, No. 20 C 6272, 2024 WL 1363710, at *5 (N.D. Ill. Mar. 29, 2024) (quoting *Lohn Eric E. v. Saul*, No. 20 C 2303, 2021 WL 722828, at *2 (N.D. Ill. Feb. 24, 2021) and SSR 96-9p, 1996 WL 374185, at *7). Plaintiff admits that she first received a prescription for a cane in January 2020, nearly three years after the June 30, 2017 DLI. R. 28, 230. As noted, moreover, treatment notes during the relevant period all documented normal gait with no mention of an assistive device.

Plaintiff finally argues that the ALJ did not fairly consider the statement from her friend Olga Murillo. Dkt. 11 at 14-15. This argument fails because the ALJ expressly discussed Ms. Murillo's June 29, 2020 report and explained that it was unpersuasive for the same reasons that he found plaintiff's testimony not fully

11

credible. R. 29, 212-19. In essence, plaintiff is asking the Court to reweigh the evidence, which it will not do. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) ("[E]ven if reasonable minds could differ on the ALJ's rejection of Zoch's testimony, we will not reweigh evidence or substitute our judgment for the ALJ's").

An ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 F. Appx. 951, 961 (7th Cir. 2013)). Viewing the record as a whole, the ALJ's assessment of plaintiff's subjective statements and other testimonial evidence was not patently wrong and her request to remand the case for further consideration of this issue is denied.

## CONCLUSION

For the reasons stated above, plaintiff's request to reverse or remand the case [11] is denied, and the Commissioner's motion for summary judgment [12] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 1/13/2025